IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

S.K., et al.

          Plaintiff,

          v.

STATE OF OREGON, et al.

          Defendants.

_____

Case No. 6:25-cv-939-MC

OPINION AND ORDER

MCSHANE, Judge:

Defendants Marcia Adams, Karen Brazeau, Robert Jester, Bobby Mink, Colette Peters, Gary Lawhead, Mike Cosner, Darin Humphreys, and Sid Thompson, move to dismiss Counts I and II, brought by Plaintiff E.G., pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss 2, ECF No. 24. Because Plaintiff E.G. pleads sufficient facts to state a claim for relief that is plausible on its face, Defendants' Motion to Dismiss, ECF No. 24, is **DENIED**.

## **BACKGROUND**[1]

E.G. is one of two plaintiffs in this action. Am. Compl at ¶ 1. E.G. is an adult who was placed in OYA custody after being adjudicated delinquent. *Id.* at ¶ 41, 44. E.G. alleges that he

---

[1] At the motion to dismiss stage, this Court takes all of Plaintiff E.G.'s allegations as true. See *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

1 – Opinion and Order

was sexually abused by a MacLaren Correctional Facility pediatrician, Edward Gary Edwards, while in OYA custody. *Id.* at 11-12.

E.G. was in OYA's custody between 2001 and 2006, except for an eight-month period he spent out of custody. *Id.* at ¶ 41. E.G. was held in multiple OYA facilities, including MacLaren. *Id.* at ¶ 42. E.G. was transferred to MacLaren in 2002 when he was 15 years old. *Id.* at ¶ 44. He received an intake medical examination with Edwards. *Id.* at ¶ 45. During that appointment, "Edwards did not wear gloves and fondled E.G.'s testicles and stroked E.G.'s penis without medical justification or necessity." *Id.* E.G. "asked Dr. Edwards what the point was of his actions and Dr. Edwards replied to him he was 'screening.'" *Id.* After E.G.'s appointment, E.G. "asked one of the security staff if it was normal for a doctor not to wear gloves for a physical examination." *Id.* at ¶ 46.

Edwards saw E.G. for a rolled ankle in 2002. *Id.* at ¶ 47. In this appointment with Edwards, Edwards "rubbed E.G.'s testicles and put his hand around E.G.'s penis and stroked it without gloves and without medical necessity or justification." *Id.* In 2003 or 2004, Edwards saw Plaintiff for another physical examination, in which "Edwards did not wear gloves and fondled E.G.'s testicles and stroked his penis without medical necessity or justification." *Id.* at ¶ 48.

E.G. alleges that "many OYA staff were aware of or suspected Dr. Edwards sexual abuse of youth at MacLaren. These well-founded suspicions were either not reported properly or were not investigated properly." *Id.* at ¶ 40. Per E.G., "Defendants disregarded widespread sexual abuse of youth at OYA facilities and created conditions that tolerated sexual abuse at MacLaren while Plaintiffs were incarcerated there." *Id.* at ¶ 30. E.G. alleges that less than two years have elapsed since he "discovered the causal connection of the abuse, the injuries resulting from that abuse, and the responsibilities of Defendants and negligence in causing that abuse." *Id.* at ¶ 52.

In his October 2025 complaint, E.G. alleges four counts against Oregon, by and through OYA, and numerous individual OYA employees, all of whom are sued in their individual capacities. *Id.* at 2-5, 14-20. Defendant Adams is the assistant director of medical services.[2] *Id.* at ¶ 14. All other defendants are former directors of OYA and former superintendents at MacLaren. *Id.* at ¶ 6-13. At issue here are E.G.'s first and second counts, both of which are 42 U.S.C. § 1983 claims levied against every defendant in their individual capacity. *Id.* at 14-16. Count I alleges that Edwards's conduct "amounted to deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment" and that "Defendants knew or reasonably should have known that Dr. Edwards'[s] conduct was occurring and they failed to take any reasonable steps to stop Dr. Edwards or protect children, including Plaintiffs, from being harmed by him." *Id.* at ¶ 55, 64. In Count II, E.G. alleges a violation of his 14th Amendment substantive due process rights. *Id.* at 16. E.G. alleges that Edwards's abuse "deprived [E.G.] of [his] liberty interest in bodily integrity," and that "Defendants knew or reasonably should have known that Dr. Edwards's conduct was occurring and they failed to take any reasonable steps to stop Dr. Edwards or protect children, including Plaintiffs, from being harmed by him." *Id.* at 77-80.

Defendants move to dismiss E.G.'s Counts I and II, arguing first that the claims are time-barred, and arguing next that E.G. pleads insufficient facts to plausibly show supervisory liability under Section 1983. Mot. Dismiss 6.

## **LEGAL STANDARD**

Rule 12 permits defendants to move for the dismissal of an allegation because of plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss for failure to state a claim, the court must presume all factual allegations

---

[2] It is unclear from E.G.'s complaint whether Defendant Adams is the assistant director of medical services at MacLaren or at OYA.

of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."

*Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). To defeat a 12(b)(6) motion, a

plaintiff must plead a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

To plead a facially plausible claim, a plaintiff must show merely "more than a sheer possibility

that a defendant has acted unlawfully." *Id.* "Determining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480,

496 (9th Cir. 2019) (citing *Iqbal*, 556 U.S. at 679). When evaluating whether a plaintiff has

stated a claim, the court cannot consider "matters outside the pleadings." Fed. R. Civ. P. 12(d).

The court instead asks only whether the complaint's factual allegations, if taken as true, "state a

claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "A complaint that satisfies this standard is 'well-pleaded' and 'may proceed even if it

strikes a savvy judge that actual proof of the facts alleged is improbable.'" *Berk v. Choy*, 146 S.

Ct. 546, 553 (2026) (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

Counts I and II state valid claims for relief. E.G.'s claims are not time-barred and E.G.

pleads sufficient facts to plausibly show that Defendants acted unlawfully in their individual

capacities under Section 1983.

### I.    Claim Accrual

Taking Plaintiff's complaint as true, and drawing all reasonable inferences in Plaintiff's

favor, Plaintiff's 1983 claims are not time-barred. Section 1983 imposes liability on those who,

under the color of state law, subject or cause the subjection of another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." It does not, however, contain a statute of limitations. Instead, Section 1983 borrows the general personal injury statute of limitations from the forum state, including the forum state's law regarding equitable tolling, "except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) When Oregon is the forum state, the governing statute of limitations for a 1983 claim is O.R.S. § 12.110, which requires tort claims to be filed within two years of their accrual. *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012). When a claim accrues while a plaintiff is a minor, the statute of limitations is tolled for "no more than five years" or until the minor turns 19, whichever comes first. O.R.S. § 12.160(1), (2).

A Section 1983 claim accrues "'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury,'" not "when the plaintiff suspects a legal wrong." *Bonneau*, 666 F.3d at 581 (quoting *Lukovsky v. City and Cnty. of S.F.*, 535 F.3d 1044, 1049 (9th Cir. 2008)). "An action ordinarily accrues on the date of injury." *Ward v. Westinghouse Can., Inc.*, 32 F.3d 1405, 1407 (9th Cir.1994). Factual inquiries determining precisely when a plaintiff became aware of their injury is generally a question for the jury. *St. Clair v. Cnty. of Okanogan*, 154 F.4th 1154, 1160 (2025). "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (alteration in original) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)).

The accrual of Section 1983 claims involving sexual abuse can be delayed by a plaintiff's vulnerability at the time of alleged incident, power imbalances between the plaintiff and

defendant, and plaintiff's shame, humiliation, and guilt. *St. Clair*, 154 F.4th at 1160. In *St. Clair*, the court considered a 12(b)(6) motion attacking the timeliness of a Section 1983 claim involving sexual abuse by a sheriff's deputy. *Id.* at 1157-58. Plaintiff alleged that the deputy repeatedly "took advantage of her addiction to methamphetamines and involvement in criminal activity to coerce her into . . . unwanted sexual conduct." *Id.* at 1156. Plaintiff alleged that due to her addiction, age, and coercion, "she only came to understand she had been harmed [years later] when she read a news article . . . detailing [the deputy's] inappropriate sexual conduct with other similarly situated women." *Id.* at 1157, 1160. The court held that the plaintiff alleged sufficient "evidence at the motion to dismiss stage that the delayed realization of her injuries justifies the delayed filing," noting "'what [the plaintiff] knew and when she knew it are questions of fact,' better left for a jury." *Id.* at 1160 (alteration in original) (quoting *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986)).

Defendants argue that E.G.'s claims in Counts I and II accrued at the time of E.G.'s alleged abuse. Mot. Dismiss 5-6. E.G.'s Section 1983 claims, however, do not seek relief for the injury of Edwards's abuse. E.G.'s alleged injuries stem from violations of his 8th and 14th Amendment rights. Am Compl. 14-18. E.G.'s claims would, accordingly, accrue when E.G. "knew or in the exercise of reasonable diligence should have known" of the violation of his rights and the cause of those violations.

The running of the statute of limitations is not apparent on the face of E.G.'s complaint. At this early stage, it is plausible that E.G. only became aware of his injuries (and the cause of those injuries) in the last two years. *St. Clair* is instructive here. E.G. alleges he suffered three instances of abuse at Edwards's hands. Am. Compl. at ¶ 41-48. E.G. states that until the last two years, he was unaware of his constitutional injuries and the role of defendants in them. *Id.* at ¶

6 – Opinion and Order

25. E.G.'s position is akin to that of the plaintiff in *St. Clair*. Both E.G. and the plaintiff in *St. Clair* allege they were repeatedly sexually abused by an authority figure while in a position of vulnerability—E.G. as an incarcerated youth and the *St. Clair* plaintiff as a criminally involved person addicted to drugs. Both allege they only became aware of their constitutional injury years after the fact. *See St. Clair*, 154 F.4th at 1160 (recognizing a "flexible" standard as to claim accrual in sex abuses cases). Accordingly, the Court must refrain from attempting to divine precisely when Plaintiff became aware of the specific constitutional injuries alleged here and their cause. *See Doe v. Reese*, No. 3:24-CV-02011-AB, 2026 WL 125380 at *3 (D. Or. Jan. 16, 2026) (denying a similar 12(b)(6) motion in light of plaintiff's vulnerability and the factual inquiry necessary to ascertain accrual).

Finally, Defendants argue that *Doe v. County of Josephine*, 2015 WL 2412181 (D. Or. 2015) "is highly analogous to the case at hand." Defs.' Mot. 4. The Court disagrees. In *Doe*, plaintiffs alleged that they were sexually abused by their probation officer two decades before filing their claims under Section 1983. Importantly, in that case, "plaintiffs admit that they knew that they had been abused by [their probation officer], and no plaintiff asserts that he did not know or realize that [the probation officer's] abuse caused him injury at the time." *Doe*, 2015 WL 2412181 at *2. In contrast, Plaintiff here specifically alleges that for a variety of reasons, he did not realize that he had been abused or suffered any injury until decades later, when reports surfaced of Dr. Edwards's abuse and years of cover ups surrounding that abuse by OYA officials. At this stage, it is plausible that Plaintiff only realized at that time that he had not merely been subjected to uncomfortable medical examinations but was a victim of sexual abuse. In short, *Doe* does not support Defendants' arguments here.

## II.    Sufficiency of Allegations

For a Section 1983 claim to succeed, "a plaintiff must plead that each government-official defendant, through the official's own individual actions . . . violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiffs, however, can show that a government official is liable for the constitutional violations of a third party through supervisory liability. *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018). Under supervisory liability, a plaintiff must show "'there exists either (1) [the supervisor's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). A sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation exists when a supervisor "'knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury . . . .'" *Starr v. Baca*, 652 F.3d 1202, 1207—08 (9th Cir. 2011) (quoting *Dubner v. City & Cnty. of San Francisco,* 266 F.3d 959, 968 (9th Cir. 2001).

In Counts I and II, E.G. pleads that Defendants were not personally involved in E.G.'s alleged constitutional deprivation, but that there exists a causal connection between Defendants' actions and E.G.'s deprivation. Am. Compl. at ¶ 64, 77. Both Counts attribute E.G.'s constitutional injuries to Edwards's conduct and state "Defendants knew or reasonably should have known that Dr. Edwards's conduct was occurring and they failed to take any reasonable steps to stop Dr. Edwards or protect children, including Plaintiffs, from being harmed by him." *Id.* Since E.G. seeks to establish liability by connecting Defendants' wrongful conduct to E.G.'s constitutional injuries, E.G. must show that Defendants knowingly refused to stop Edwards's abuse, which the Defendants "knew or reasonably should have known would cause others to

inflict a constitutional injury . . . .'" *Starr*, 652 F.3d at 1202.

When evaluating a 12(b)(6) motion, the court must accept a plaintiff's allegations as true. The law does not require blow-by-blow allegations. The law merely requires plaintiff's allegations, "taken as true . . . plausibly suggest an entitlement to relief . . . ." E.G. describes the individual Defendants' roles—i.e., that they were Directors of OYA at various times and, as Directors, they supervised and coordinated programs in OYA facilities—and generally alleges that they ignored reports of Edwards's abuse and knowingly refused to stop Edwards. E.G. alleges that Defendants had "a long history of ignoring reports of staff sexually abusing youth" and created a culture in which reports of abuse went "unchecked." First Am. Compl. ¶ 18. The Complaint alleges that Defendants "normalized sexual abuse" so that youths like E.G. would "not understand or appreciate the abuse committed against them." *Id*. at ¶ 19. Dr. Edwards's abuse was so rampant that Defendants, as Directors and supervisors, knew of the abuse (yet failed to act). *Id*. at ¶ 20.

The Court recognizes that the allegations here lack the specifics found in *Starr*. The plaintiff in *Starr* brought Section 1983 claims against the Sheriff following plaintiff's assault in the Los Angeles County Jail. As is the case here, that plaintiff acknowledged that the Sheriff was not personally involved in the attack, but alleged "that Sheriff Baca is liable in his individual capacity because he knew or should have known about the dangers in the Los Angeles County Jail, and that he was deliberately indifferent to those dangers." *Starr*, 652 F.3d at 1204–05. The court confirmed that, as with the claims here, the claims there were not based on vicarious liability from the actions or omissions of the Sheriff's subordinates, but rather for the Sheriff's own deliberate indifference; i.e., "the supervisor is being held liable for his or her own culpable action or inaction . . . ." *Id.* at 1207. The court noted that absent direct personal involvement in

the constitutional violation:

> The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation, or for conduct that showed a reckless or callous indifference to the rights of others.

*Id.* at 1207–08 (cleaned up) (internal citations and quotations omitted).

While this is a close question, the Court concludes that the allegations provide enough notice to the individual Defendants allowing them to adequately defend the claims. The claims here are no surprise to the individual Defendants. Additionally, the Court must view these allegations in light of the fact that there are currently 20 or so similar cases pending before the Court involving youth housed at MacLaren during the same general time-period at issue here. Nearly 200 plaintiffs bring essentially the same allegations that E.G. advances here. Again, while this is a close question given *Starr*, the First Amended Complaint states a plausible claim for relief that the individual Defendants knew of Dr. Edwards's actions and failed to take any steps to increase the safety of youths in OYA custody.

## **CONCLUSION**

Plaintiff E.G. pleads sufficient facts to state a claim for relief that is plausible on its face. Defendants' Motion to Dismiss, ECF No. 24, is DENIED.

IT IS SO ORDERED.

DATED this 14th day of April 2026.

  s/Michael J. McShane        
Michael McShane
United States District Judge

10 – Opinion and Order